IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JESSIE CLEVELAND SEAMSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:14cv604 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jessie Cleveland Seamster ("Seamster") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Seamster alleges that the Administrative Law Judge ("ALJ") erred when he (1) failed to find evidence of Seamster's adaptive functioning deficits prior to age 22 and (2) failed to complete a function-by-function analysis. Seamster only contests the ALJ's findings regarding his mental abilities and does not object to the ALJ's conclusions regarding his physical residual functioning capacity ("RFC").

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the ALJ did not err and that substantial evidence supports the ALJ's decision. Accordingly, I

1

**RECOMMEND DENYING** Seamster's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Seamster failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Seamster bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

The Commissioner uses a five-step process to evaluate a disability claim. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Seamster was born in April of 1976 (Administrative Record, hereinafter "R." at 171), and was 37 years old as at the time of his alleged onset, making him a younger individual under the Act. R. 171; 20 C.F.R. §§ 404.1563, 416.963. Seamster's last insured date is March 31, 2015. R.15. Therefore he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Seamster completed high school, but could not recall whether he received a general diploma or a special education diploma. R. 36–37. Seamster previously

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

worked as a resin gun operator at a manufacturing company where he applied fiberglass to bathtubs. R. 38. He also installed insulation for approximately four years, and worked as a pipe layer for approximately six months. R. 40. Seamster reported that during the relevant period, he had the capacity to help his children get ready for school, prepare leftovers and sandwiches to eat, do light housework, shop for groceries with his wife, handle cash, visit family and friends, and attend church. R. 242–49. He also reported that he had difficulty using his right arm to complete his personal needs, that he cannot read or write well, and that he had trouble with concentration, memory, and pain with lifting or reaching. Id.

## Claim History

Seamster filed for SSI and DIB on October 7, 2011, claiming that his disability began on December 1, 2009. R. 171. At the hearing before the ALJ, Seamster amended his onset date to February of 2011. R. 35. The Commissioner denied his application at the initial and reconsideration levels of administrative review. R. 53, 79. On June 18, 2013, Administrative Law Judge ("ALJ") Brian P. Kilbane held a hearing to consider Seamster's disability claim. R. 32–52. Seamster was represented by an attorney, Joel C. Cunningham, Jr., at the hearing, which included testimony from Seamster and vocational expert Stacy Voss. R. 32.

On June 27, 2013, the ALJ entered his decision denying Seamster's claims. R. 13–26. The ALJ found that Seamster suffered from the severe impairments of bilateral carpal tunnel syndrome, right shoulder impairment status post surgery, and borderline intellectual functioning. R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 16. The ALJ further found that Seamster retained the RFC to perform light work, with no more than frequent overhead reaching with his dominant right upper extremity. R. 18. The ALJ also concluded that Seamster was functionally illiterate,

4

but that he could perform simple, routine, unskilled work on a sustained basis in a competitive environment. Id. The ALJ determined that Seamster could not return to his past relevant work as a pipe layer, insulation installer, or resin gun operator (R. 24 ), but that Seamster could work at jobs that exist in significant numbers in the national economy, namely: small parts assembler, kitchen worker, and laundry worker. R. 25. Thus, the ALJ concluded that he was not disabled. Id. On September 23, 2014, the Appeals Council denied Seamster's request for review (R. 1), and this appeal followed.

## ANALYSIS

### Listing 12.05

Seamster contends that the ALJ erred because he did not conclude that he met or medically equaled the listing contained in § 12.05 for an intellectual disability. Specifically, Seamster argues that he met the criteria of § 12.05(C) because he had a valid verbal, performance, or full scale IQ of 60 through 70 and because his intellectual limitations initially manifested before he was 22 years old.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Listing 12.05(C) for intellectual disability states the following:

5

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05.

The structure of this listing is different than that of other mental disorder listings in that it contains "an introductory paragraph with the diagnostic description for intellectual disability" as well as four sets of criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00(A). Thus, Listing 12.05(C) presents a three-pronged proof requirement. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).[2] Prong 1 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." § 12.05. "In regard to adaptive deficits, Plaintiff must prove that she had those deficits both 1) during the developmental period, i.e., prior to age 22, and 2) during the subsequent period of alleged disability." Leftwich v. Colvin, 2016 WL 126753, at *4 (M.D.N.C. Jan. 11, 2016); see also Hancock v. Astrue, 667 F.3d 470, 475 (4th Cir. 2012) (noting that "[e]ither finding alone," i.e., no adaptive deficits generally or no such deficits prior to age 22, "suffic[es] to support the conclusion that [the claimant] did not satisfy" Listing 12.05).

---

[2] Prongs 2 and 3 are not at issue here, and the court assumes without deciding that these requirements were met.

Deficits in adaptive functioning "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012); see also Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002) ("Adaptive acitivities" are defined in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.05 and 12.00(C)(1) as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.").

Seamster argues that his deficits did manifest before he was 22 years old. As proof, he offers his testimony that he was in special education classes from first through twelfth grades, that he is functionally illiterate, and that he did not have the mental ability to complete a vocational rehabilitation program after high school. Substantial evidence supports the ALJ's determination that Seamster failed to establish that he lacked deficits in adaptive functioning either before the age of 22 or after.

First, simply being placed in special education classes as a child does not, alone, prove that a person has "significantly subaverage general intellectual functioning with deficits in adaptive functioning." § 12.05 (emphasis added). Seamster must also show that his intellectual limitations created some sort of deficit in adaptive functioning. This he cannot do. The record establishes that despite his limited academic abilities, in the eleventh grade, Seamster completed his assignments, and was cooperative, friendl,y and applied himself well. R. 341. His cognitive abilities were in the "mildly mentally deficient range" (R. 341) but his "self care skills [were] appropriate." R. 342. He had strengths in math and general knowledge and weaknesses in spelling and writing. R. 343. In 1993, the school social worker wrote that Seamster did not

7

appear to have any trouble getting along with other students and was not a disciplinary problem. R. 345. Seamster's personal care skills were age appropriate and the social worker concluded that he had "a lot of potential for working and providing for his own needs." R. 346. While an assessment from 1993 noted that Seamster had some "mixed abilit[ies]" in the area of independent living, his evaluator concluded that he could manage his own living quarters and take care of his hygiene. R. 481–82. He did have some difficulty reading and interpreting classified ads and a television schedule, but displayed sufficient communication skills and could read and interpret labels and signs. Id. During his vocational evaluation, his evaluator noted that he did have difficulty following instructions due to his limited academics, and that his ability to work independently and quickly with a high work quality was limited. R. 494.

Seamster's school records consistently identify writing, reading, and spelling as his most difficult subjects. See, e.g., R. 598–99, 601, 623. However, the records also note that Seamster was friendly, got along well with his peers, and was capable of caring for himself at an age appropriate level. See, e.g., R. 345, 356, 481. It is not for me to re-weigh the evidence to determine how I would have resolved Seamster's case. I am tasked with determining whether substantial evidence supports the ALJ's resolution of the case. Here, substantial evidence supports the ALJ's determination that Seamster did not exhibit a combination of "significantly subaverage general intellectual functioning" and "deficits in adaptive functioning" prior to the age of 22.

Second, Seamster failed to show that any deficits in adaptive functioning continued into the relevant period, as required by Leftwich and Hancock. After finishing school, Seamster got married, had children, and went to work. R. 171, 243, 38. Prior to the onset of his shoulder pain, Seamster's wife reported that he used to garden, play football with his children, and go hunting

8

Case 7:14-cv-00604-MFU-RSB   Document 20   Filed 02/12/16   Page 8 of 16   Pageid#: 899

and fishing. R. 232. She also reported that he was currently able to pay bills in cash, count change, and handle a savings account. Id. He maintains social relationships with his mother and his father-in-law. R. 233. It appears that most of Seamster's limitations as an adult stem from his physical pain rather than his mental limitations.

In addition to these reports, the ALJ also relied on the report of consultative examiner Christopher Cousins, Ph.D., in coming to the conclusion that Seamster had no limitations in his adaptive functioning. Dr. Cousins evaluated Seamster on December 22, 2011, and concluded that his thought content was reality based with no evidence of hallucinations or delusions. R. 519. His thought process was coherent, organized, and logical. Id. Dr. Cousins concluded that Seamster's immediate and remote memory were good and his recent memory was fair. R. 520. He had good calculation abilities and his judgment and commonsense reasoning abilities were fair to good. Id. Though his full scale IQ score was 65, Dr. Cousins wrote that Seamster's "adaptive living skills are higher than what would be predicted by this score." R. 521. Based on all of these findings, Dr. Cousins concluded that Seamster was capable of performing simple and repetitive tasks, and that he may be able to perform some specific detailed and complex tasks with instructions or additional supervision. R. 523. Dr. Cousins wrote "[t]here appears to be no psychiatric reason to suggest that [Seamster] would be unable to maintain regular attendance in the workplace, perform work activities on a consistent basis or complete a typical workday or workweek without interruptions." Id. The ALJ gave "great weight" to this opinion (R. 23) and Seamster does not contest that decision.

This substantial evidence supports the ALJ's conclusion that Seamster lacked the requisite deficiencies in adaptive functioning required to meet the 12.05(C) listing because it
9

supports the conclusions that Seamster did not manifest limitations in adaptive functioning before the age of 22 and that he did not continue to have any such difficulties after age 22. Having considered the record as a whole, I find substantial evidence supports the ALJ's conclusion that Seamster did not meet or equal Listing 12.05(C).

**Function-by-function Analysis**

Seamster next argues that the ALJ's RFC assessment that found he was capable of "simple, routine, unskilled work" (R. 18) did not adequately address Seamster's moderate limitations in concentration, persistence, or pace following the Fourth Circuit's decision in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015). As a result of this alleged inadequacy, Seamster asserts that the ALJ did not pose a hypothetical question to the vocational expert that properly accounted for this moderate limitation. Seamster relies upon the holding in <u>Mascio v. Colvin</u>, 780 F.3d at 638, that an ALJ "does not 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (citing <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011)).

In <u>Mascio</u> the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u> at 638; <u>see</u> <u>also</u> <u>Sexton v. Colvin</u>, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing <u>Wiederholt v. Barnhart</u>, 121 Fed. Appx. 833, 839 (10th Cir. 2005)). The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at

10

638; see also Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at *7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative

11

physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and those limitations must be included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony,

12

medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

In Seamster's case, substantial evidence supports the ALJ's decision to address his limitations in concentration, persistence, or pace by limiting him to simple, routine, unskilled work. Seamster's work history, his ability to care for himself and his children, and the medical opinion evidence in the record all provide substantial evidence to support the ALJ's conclusion that Seamster remained capable of performing simple tasks in the workplace. Based on this evidence, the ALJ posed acceptable questions to the vocational expert and committed no error.

First, the ALJ addressed Seamster's prior work history and the negligible impact his existing mental impairments had on his ability to sustain employment from 1995 until 2009. R. 21, 188–89. In conjunction with Seamster's ability to maintain consistent employment, the ALJ also noted that he was able to take his blood pressure, remember his medications, remind his children about things they needed for school, prepare food, drive, pay bills in cash, and count change. R. 21, 242–49. Thus the ALJ concluded that "[t]his level of activity is incompatible with total disability. R. 21–22.

Second, the ALJ addressed the medical opinions from the consultative examiner. On December 22, 2011, Seamster met with Dr. Cousins, who prepared a report based on his examination. Dr. Cousins concluded that Seamster's full scale IQ was 65, which" place[d] his intellectual functioning in the mild range of mental retardation." R. 521. "However," Dr. Cousins continued, "[Seamster's] adaptive living skills are higher than what would be predicted by this score." Id. Based on this evaluation, Dr. Cousins concluded that "[t]here appears to be no psychiatric reason to suggest that [Seamster] would be unable to maintain regular attendance in the workplace, perform work activities on a consistent basis or complete a typical workday or

13

workweek without interruption." R. 523. Seamster "is capable of performing simple and repetitive tasks. With the aid of special instructions or additional supervision, [he] may be able to perform some specific detailed and complex tasks." Id.

Third, when he posed his hypothetical questions to the vocational expert, the ALJ did address Seamster's limitations in concentration, persistence, or pace. The ALJ's hypothetical question addressed Seamster's physical and mental limitations in depth, paraphrasing from the consultative examiner's opinions as the ALJ constructed a hypothetical person similar to Seamster. The ALJ asked the expert to consider someone who had a "full-scale evaluation" of 65 but likely functioned on a higher level, who had a history of special education classes, who should be able to maintain regular attendance in the workplace, and whom the examiner concluded could perform simple, repetitive tasks, and with additional instruction or supervision, may be able to perform some more detailed and complex tasks. R. 50. The ALJ included Seamster's physical limitations in his hypothetical question as well. The vocational expert responded that Seamster would not be able to return to his past work, but that he could work as a small parts assembler, kitchen worker, or laundry worker. R. 51, 49. This type of question – in which the ALJ adopts and paraphrases the consultative examiner's opinion – is a proper way to address a claimant's limitations in concentration, persistence, or pace. See Jones v. Colvin, 7:14-CV-273, 2015 WL 5056784, at *5 (W.D. Va. Aug. 20, 2015) (holding that "[w]hile the Law Judge did not specifically mention moderate limitations in concentration, persistence, and pace, the vocational expert was not restricted in any way in her reading of [the consultative examiner's report" and finding that "the hypothetical question referenced all of the work-related impairments reasonably documented in the medical record.").

Finally, the ALJ determined that Seamster's statements regarding the severity of his alleged symptoms and limitations were not entirely credible because they were inconsistent with the other evidence in the record. R. 21. The ALJ is only required to include a claimant's limitations in a hypothetical question to the vocational expert if the ALJ has concluded that a particular limitation is credible. See Lowe v. Colvin, No. 4:13-CV-3164-TER, 2015 WL 1486886, at *5 (D.S.C. Mar. 31, 2015) (citing Walker v. Bowen, 889 F. 2d 47, 50 (4th Cir. 1989)). Seamster does not contest the ALJ's credibility determination. The ALJ found that Seamster's alleged mental limitations were not as severe as he claimed, and thus based his hypothetical questions to the vocational expert on the credibly established limitations that he found in the record. The ALJ's reliance on the medical opinion evidence in this case provides substantial evidence to support this decision.

## CONCLUSION

Having reviewed the entire record and applicable law in this case, I find that the ALJ committed no reversible error. Accordingly, I recommend that the Commissioner's motion for summary judgment should be **GRANTED** and that Seamster's motion should be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period described by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                              Entered: February 11, 2016

                                              *Robert S. Ballou*

                                              Robert S. Ballou
                                              United States Magistrate Judge